IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| | § | |
| - vs - | § | CRIMINAL No.  06-102-02 (JDB) |
| | § | |
| | § | |
| **ANDERSON STRAKER,** | § | |
| **CHRISTOPHER SEALEY,** *et al.* | § | |
| Defendants. | § | |
| | § | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT STRAKER'S MOTION TO RETURN DEFENDANT TO THE REPUBLIC OF TRINIDAD/TOBAGO AND DEFENDANT SEALEY'S MOTION TO JOIN SUCH MOTION

The United States of America ("United States" or "Government"), for the reasons set

forth below, opposes defendant Anderson Straker's Motion to Return Defendant Anderson

Straker to the Republic of Trinidad/Tobago [Document #210] ("Mr. Straker's Motion"), and

defendant Christopher Sealey's Second Motion to Adopt and Join Motions [Document #222]

("Mr. Sealey's Motion"),[1] as it relates to Mr. Straker's Motion herein, and urges that they be, in

all things, denied.

### *Nature of the Case*

Defendant Anderson Straker ("Mr.  Straker" or "defendant") is one of twelve Trinidadian

nationals who have been indicted in the District of Columbia for Conspiracy to Commit Hostage

Taking Resulting in Death and Hostage Taking Resulting in Death, both charges in violation of

18 U.S.C. § 1203(a).  According to the allegations of the superseding Indictment, beginning on or

about February 1, 2005 and ending on or about April 15, 2005, Mr. Straker and his co-

---

[1] The Government has no objection to Mr. Sealey joining Mr. Straker's Motion.

conspirators, embarked upon a common plan to obtain the money of American citizen, Balram

Maharaj, who was a visitor to the Island of Trinidad and who had relatives there. The

conspirators' initial plan was to kidnap Mr. Maharaj's 5-year old son, Dinesh Maharaj, and to

hold Dinesh for ransom. However, the conspirators later discarded the initial plan and

determined to kidnap Balram Maharaj and sought to obtain a ransom of Mr. Maharaj's money,

from Mr. Maharaj's relatives, for his release. On April 6, 2005, in accordance with their plan,

Balram Maharaj was abducted and a ransom of $3,000,000 Trinidad (approximately $500,000

US) was demanded for his release. Mr. Maharaj was held captive at a hideout in a mountainous

jungle region of Trinidad. On or about April 13, 2005, Mr. Maharaj expired at the remote

hideout, as he languished in the hands of the conspirators. Following Mr. Maharaj's death,

members of the conspiracy dismembered his body and buried his body parts at another remote

location in the mountainous jungle.

By April 15, 2005, the ransom demands had ceased.

In January of 2006, Mr. Maharaj's dismembered and decomposed body was located in a

mountainous jungle region in Trinidad.

### The Allegations of Defendant Straker's Motion

In his Motion [Document #210], Mr. Straker states he was arrested on January 6, 2006 in

the Republic of Trinidad & Tobago for the abduction and murder of the victim in this case.

[Straker Motion, page 1] Mr. Straker claims he was "mistreated and held under oppressive

conditions of confinement" in Trinidad. [Id..] Mr. Straker' s Motion acknowledges he was

extradited to the United States on July 29, 2007, together with three other co-defendants. [Id.]

Mr. Straker (falsely) claims that, while he was held in overcrowded facilities in Trinidad &

Tobago, he was assaulted by "an F.B.I. agent and a Trinidadian police officer." [Id., page 2] Mr. Straker (who was represented by retained counsel in Trinidad) says he complained to Trinidadian courts about his treatment and the alleged assault. [Id.] Mr. Straker admits he signed "a document that purports to be a waiver of a challenge to extradition." [Id.] However, Mr. Straker's Motion now argues, at that time, Mr. Straker "felt isolated, feared for his well-being, and did not consider himself to be in a position where he had a genuine freedom of choice concerning consent to interrogation and extradition." [Id.] Because, Mr. Straker's Motion says, his "purported waiver was not voluntary, [and] was the product of coercion," it should not be given any effect. [Id.]

As the legal basis for his argument, Mr. Straker recites that the United States and Trinidad & Tobago have an Extradition Treaty. [Id.] Article 15 of that Treaty states that "[i]f the person consents to surrender in the Requesting State, the Requested State may surrender the person as expeditiously as possible, without further proceedings." [Id., pages 2-3] Acknowledging the rule in *Ker*,[2] Mr. Straker nevertheless states that if he did not "voluntarily" consent to his extradition – irrespective of his written and oral consent thereto – then "the Treaty was breached and defendant was wrongfully extradited without additional judicial process." [Id., page 3] As a result, he says, he should be returned to Trinidad & Tobago. [Id., page 4]

### Defendant Sealey's Motion to Join Defendant Straker's Motion

In his Second Motion to Adopt and Join Motion [Document #222], Mr. Sealey seeks, *inter alia*, to join Mr. Straker's Motion herein. [Sealey Motion, page 1, para. 4] In support of his Motion, Mr. Sealey states baldly that " each of these motions raises requests for relief which are

---

[2] *Ker v. Illinois*, 119 U.S. 436 (1886).

equally applicable to Mr. Sealey." [Id., page 1][3]

For the reasons set forth below, both Mr. Straker's Motion and Mr. Sealey's Motion are without merit and should be, in all things, denied.

## DEFENDANTS' MOTIONS ARE WITHOUT PROPER FOUNDATION OR MERIT AND SHOULD BE DENIED

The analysis and holding of *United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006), are dispositive of Mr. Straker's (and Mr. Sealey's) claims. In *Mejia*, two defendants claimed the District Court lacked jurisdiction over their case because "DEA agents took them into custody in Panama and transferred them to the United States without following the formal requirements of the extradition treaty between the two countries." Id. at 442. In rejecting the defendants' claims, the Court of Appeals for the District of Columbia Circuit found that their claims were governed by *United States v. Alvarez-Machain*, 504 U.S. 655 (1992), in which the Supreme Court considered a similar argument by a defendant who had (in fact)[4] been forcibly abducted from Mexico, flown by private plane to Texas, and then arrested by DEA agents. In *Alvarez-Machain*, the Supreme Court established the appropriate analytical framework:

> [O]ur first inquiry must be whether the abduction of respondent from Mexico violated the Extradition Treaty between the United States and Mexico. If we conclude that the Treaty does not prohibit respondent's abduction, the rule in *Ker*

---

[3] Presumably, Mr. Sealey's Motion seeks *Mr. Sealey's* return to Trinidad & Tobago, rather than *amicus* support for Mr. Straker's motion seeking Mr. Straker's return to Trinidad & Tobago. However, if that is the case, Mr. Sealey's Motion is devoid of any factual basis to support the relief he likely seeks. This is so, because it is difficult to fathom how Mr. Straker's factual allegation that *Mr. Straker* misunderstood and involuntarily executed *Mr. Straker's* waiver of extradition, is applicable to and/or supportive of relief that may be sought by Mr. Sealey.

[4] The *Alvarez-Machain* trial court concluded that the agents were responsible for the defendant's abduction, although they were not personally involved in it. *See* 504 U.S. at 657.

applies, and the court need not inquire as to how respondent came before it.

448 F.3d at 442 (*quoting Alvarez-Machain*, 504 U.S. at 662.) The "rule in *Ker*," referred to in

the above, is the rule set out in *Ker v. Illinois*, 119 U.S. 436 (1886), as applied in *Frisbie v.*

*Collins*, 342 U.S. 519 (1952), and as reaffirmed in *Alvarez-Machain*. Under the rule in *Ker*:

> [T]he power of a court to try a person for crime is not impaired by the fact that he
> had been brought within the court's jurisdiction by reason of a 'forcible abduction'
> .... [D]ue process of law is satisfied when one present in court is convicted of
> crime after ... a fair trial in accordance with constitutional procedural safeguards.
> There is nothing in the Constitution that requires a court to permit a guilty person
> rightfully convicted to escape justice because he was brought to trial against his
> will.

*Alvarez-Machain*, 504 U.S. at 661-62 (*quoting Frisbie*, 342 U.S. at 522 (*quoting Ker*, 119 U.S. at

444)).

In *Alvarez-Machain*, the Supreme Court went on to find that the extradition treaty "sa[id]

nothing about the obligations of the United States and Mexico to refrain from forcible abductions

of people from the territory of the other nation, or the consequences under the Treaty if such an

abduction occurs." 504 U.S. at 663. Nor could the Court "infer from th[e] Treaty and its terms

that it prohibit[ed] all means of gaining the presence of an individual outside of its terms." Id. at

668-69. Accordingly, the Supreme Court concluded that "respondent's abduction" was not in

violation of the Extradition Treaty between the United States and Mexico; that the rule of *Ker*

was fully applicable to the case; and that the fact of respondent's forcible abduction did not

therefore prohibit his trial in a court in the United States "for violations of the criminal laws of

the United States." Id. at 670.

Following the Supreme Court's guidance in *Alvarez-Machain*, the District of Columbia

Circuit in *Mejia* rejected the defendants' jurisdictional claims. 448 F.3d at 443.

Further, in the related case of *United States v. Suchit*, 480 F.Supp.2d 39 (D.D.C. 2007),

this Court rejected claims eerily similar to those raised here by Mr. Straker:

> It is not at all clear in light of *Alvarez–Machain* and *Mejia* that the Court is free to
> superimpose the voluntariness standards of Fourth or Fifth Amendment case law on
> the extradition treaty, particularly in light of the Supreme Court's refusal to create
> implied terms without a solid foundation for that term in "the practice of nations
> regarding extradition treaties." 504 U.S. at 667, 112 S.Ct. 2188. Moreover,
> superimposing an imprecise "totality of the circumstances" standard would be
> inconsistent with the Supreme Court's observation that "[e]xtradition treaties exist
> so as to impose mutual obligations to surrender individuals *in certain defined sets of
> circumstances.*" *Id.* at 664, 112 S.Ct. 2188. It bears noting, as well, that it would
> be fundamentally at odds with the core presumption of *Alvarez–Machain*—again, a
> forcible abduction case—that the express terms of a treaty trump any concerns
> about the voluntariness of a defendant's transfer to the United States. *See Mejia*,
> 448 F.3d at 443 (emphasizing that, in *Alvarez–Machain,* the use of force in the
> context of forcible abduction was not prohibited considering that the treaty " 'sa[id]
> nothing about the obligations of the United States and Mexico to refrain from
> forcible abductions or the consequences under the Treaty if such an abduction
> occurs.' ") (*quoting* 504 U.S. at 663, 112 S.Ct. 2188).

*Suchit*, 480 F.Supp.2d at 50.

Hence, the Court should refrain from further inquiry in the instant case.

However, if the Court inquires further, it should not pass unnoticed that Mr. Straker's

Motion seeks to divert the Court from the fact that Mr. Straker was represented by an attorney

retained by him in Trinidad and that he was provided with numerous Court proceedings on his

challenge to extradition to the United States. After due process, Mr. Straker and Mr. Sealey lost.

The Chief Magistrate Judge and the Trinidad & Tobago High Court heard and rejected Mr.

Straker's and Mr. Sealey's objections and ordered that they be extradited to the United States. At

the conclusion of the Trinidadian extradition proceedings, when Mr. Straker failed to file further

appeals, Mr. Straker admits he signed a document waving his challenge to extradition.

*Alvarez-Machain* makes clear that, even if Mr. Straker and Mr. Sealey had been forcibly abducted from Trinidad at the behest of the FBI -- which they were not -- they would nevertheless not have stated a claim upon which relief could be granted. Because Mr. Straker's and Mr. Sealey's Motions fail to state a claim upon which relief can be granted, their Motions are without merit and should be denied.

WHEREFORE, for each of the independent reasons set forth above, defendant Anderson Straker's Motion to Return Defendant Straker to the Republic of Trinidad/Tobago [Document #210]and defendant Christopher Sealey's joinder of Mr. Straker's Motion [Document #222], are each, independently and in combination, without merit, and they should be, in all things, denied.

Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar No. 498610)
United States Attorney


/S/

By:    _____
BRUCE R. HEGYI (D.C. Bar No. 422741)
Assistant United States Attorney
Federal Major Crimes Section
555 Fourth Street, N.W., Room 4848
Washington, D.C. 20530
(202) 305-9637
(202) 353-9414 (fax)
www.bruce.hegyi@usdoj.gov


JEANNE M. HAUCH
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W., 11th Floor
Washington, D.C. 20530
(202) 514-5776

-7-

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served upon the following counsel, electronically, on this 6th day of August, 2008:

Steven R. Kiersh
5335 Wisconsin Avenue, N.W.
Suite 400
Washington, DC 20015
*Counsel for Anderson Straker*

John J. Carney
Carney & Carney
601 Pennsylvania Avenue, NW
Suite 900 - South Building
Washington, DC 20004
*Counsel for Wayne Pierre*

Pleasant S. Brodnax, III
The Mills Building, Suite 400
1700 Pennsylvania Avenue, NW
Washington, DC 20006
*Counsel for Kevin Nixon*

Patrick M. Donahue
Donahue Law Firm
18 West Street
Annapolis, MD 21401
*Counsel for Christopher Sealy*

_____/s/_____

Bruce R. Hegyi